**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>MARIO BENICIO MEJORADO (1),<br>DIANA AZUCENA GARCIA(2),<br>Defendants. | CASE NO. 14CR930 WQH<br>ORDER |

HAYES, Judge:

The matters before the Court are: 1) Defendants' combined motion for an order suppressing evidence and directing the Government to return Defendants' mobile phones (ECF No. 50); and 2) Defendant Mejorado's motion for an order suppressing post-arrest statements (ECF No. 51).

**BACKGROUND FACTS**

On March 15, 2014, agents arrested Defendant Mario Benicio Mejorado and Defendant Diana Azucena Garcia at the San Ysidro Port of Entry, after methamphetamine was found hidden in the spare tire of Defendant Mejorado's vehicle. At the time of the arrest, the agent seized Defendants' cell phones.

Defendant Mejorado was brought to an interrogation room for questioning. The interview was videotaped. The agents informed Defendant Mejorado of his *Miranda* rights and asked him: "Do you understand?" Defendant responded: "I do. I just have a question, um, can I know what's going on?" The agent informed Defendant that he was under arrest for transporting narcotics into the United States. The agent stated: "So,

do you understand your rights?" Defendant stated: "I understand my rights, but I just want to let you know that I am not aware of...what is even going on or taking place." (ECF No. 62-1 at 9-10). The agent informed Defendant that he was under arrest "because you have a controlled substance in your vehicle." *Id.* at 10. Defendant continued to ask the agent questions and to respond to questions asked by the agent relating to his arrest. ("But how can I be under arrest for something I haven't even committed." *Id.*; "So basically, no matter what I say. I'm still going to be arrested?" *Id.*; "They could have found it right here, but that is not my stuff." *Id.* at 11; "I've never been found guilty of doing anything." *Id.* at 12; "I didn't even get a chance to explain myself." *Id.* at 13; "Where did they find the drugs?" *Id.* at 14). After more conversation between the Defendant Mejorado and the agent, the following exchange took place:

> Agent: I'm gonna write this stuff down.
> Defendant: Okay, when can I see a lawyer?
> Agent: So, do you want one?
> Defendant: Wait, no. I'm asking you first.
> Agent: Well you're gonna
> Defendant: I'm trying to protect myself from ...
> Agent: Ok. You're gonna have, the justice system mandates that you have to have an attorney before your arraignment.
> Defendant: And when is my arraignment?
> Agent: It'll be Monday.
> Defendant: So when can I get a lawyer?
> Agent: By Monday, you'll have one appointed to you.

*Id.* at 16. Defendant continued to ask the agent questions and to respond to questions asked by the agent relating to his arrest. (For example: "Please. If you were in my shoes. You'd know how it feels like okay, when someone's telling you that you're bringing drugs over." *Id.* at 17; "So how the hell is it that all of a sudden they found something when they could have easily done that before." *Id.* at 18.) Defendant continued to ask the agent questions and to respond to questions asked by the agent relating to his arrest. Approximately fifteen minutes after the *Miranda* warnings and Defendant's statement that he understood his rights, Defendant stated: "Hold on. I want a lawyer" and the questioning ceased. *Id.* at 23.

Defendants were charged with importation of methamphetamine in violation of 18 U.S.C. §952 and 960.

1) <u>Defendants' combined motion for an order suppressing evidence and directing the Government to return Defendants' mobile phones</u> (ECF No. 50);

The Government states in a Supplemental Document "it does not intend to introduce this evidence at trial [and] believes that this renders the [motion] moot." (ECF No. 63). Defendants agree. Defendants' combined motion for an order suppressing evidence is denied as moot and motion to direct the Government to return Defendants' mobile phones is granted.

2) <u>Defendant Mejorado's motion for an order suppressing post-arrest statements</u> (ECF No. 51).

Defendant contends that the Government cannot use any portion of his post-arrest statement at trial on the grounds that the Government cannot establish a valid waiver of his *Miranda* rights. Defendant contends that the video and the transcript establish that he never intended to waive his *Miranda* rights.[1]

The Government contends that Defendant Mejorado implicitly waived his *Miranda* rights when he gave an uncoerced statement to agents after indicating that he understood his rights. The Government asserts that it does not need to show an express *Miranda* waiver. The Government contends that waiver was implied when Defendant stated that he understood his rights and made statements that were not coerced.

<u>Applicable Law</u>

"For inculpatory statements made by a defendant during custodial interrogation to be admissible in evidence, the defendant's waiver of Miranda rights must be voluntary, knowing, and intelligent." *United States v. Garibay*, 143 F.3d 534, 536 (9th Cir. 998)(internal quotation omitted). "Only if the totality of the circumstances

[1] Defendant submits a declaration stating in part: "After my arrest, when the agents interviewed me, I never intended to, and did not think that I was, giving up my rights." (ECF No. 51 at 9). The Court takes this statement into consideration in evaluating the transcript and the video evidence.

surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived. ” *Moran v. Burdine*, 475 U.S. 412, 421 (1986)(internal quotation omitted).

There is a presumption against waiver which the Government bears the burden of overcoming by a preponderance of evidence. *Garibay*, 143 F.3d at 536. The validity of a waiver depends upon the particular facts and circumstances of the case, including the background, experience and conduct of the defendant. *See Edwards v. Arizona*, 451 U.S. 477, 482 (1981). “Several factors to consider are (i) defendant’s mental capacity; (ii) whether the defendant signed a written waiver; (iii) whether the defendant was advised in his native tongue or had a translator; (iv) whether the defendant appeared to understand his rights; (v) whether the defendant’s rights were individually and repeatedly explained to him; and (vi) whether the defendant had prior experience with the criminal justice system.” *United States v. Crews*, 502 F.3d 1130, 1140 (9th Cir. 2007).

In *Berghuis v. Thompkins*, 560 U.S. 370 (2010), the defendant sought federal habeas relief on the grounds his statements made during a custodial interview and relied on at trial by the prosecution, had been elicited in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). Thompkins was read his *Miranda* warnings, read the warnings out loud, and declined to sign the waiver form. Thompkins was largely silent during the interrogation which lasted about three hours, but did give a few limited responses. About 2 hours and 45 minutes into the interrogation, Thompkins made inculpatory statements in response to questioning by an agent. Thompkins moved to suppress his statements on the grounds that he had invoked his Fifth amendment right to remain silent, that he had not waived his right to remain silent, and that his inculpatory statements were involuntary. The trial court refused to suppress the statements made by Thompkins. The United States Supreme Court addressed each of these arguments on appeal from the denial of habeas relief.

In rejecting Thompkins’ argument that “he invoked his privilege to remain silent

by not saying anything for a sufficient period of time, so the interrogation should have ceased before he made his inculpatory statements," the Supreme Court stated:

> This argument is unpersuasive. In the context of invoking the Miranda right to counsel, the Court in *Davis v. United States*, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), held that a suspect must do so "unambiguously." If an accused makes a statement concerning the right to counsel "that is ambiguous or equivocal" or makes no statement, the police are not required to end the interrogation, *ibid*., or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights, 512 U.S., at 461–462, 114 S.Ct. 2350.
>
> The Court has not yet stated whether an invocation of the right to remain silent can be ambiguous or equivocal, but there is no principled reason to adopt different standards for determining when an accused has invoked the *Miranda* right to remain silent and the *Miranda* right to counsel at issue in *Davis*. See, *e.g., Solem v. Stumes*, 465 U.S. 638, 648, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984) ("[M]uch of the logic and language of [*Mosley*]," which discussed the *Miranda* right to remain silent, "could be applied to the invocation of the [ *Miranda* right to counsel]"). Both protect the privilege against compulsory self-incrimination, *Miranda*, supra, *at 467*–473, 86 S.Ct. 1602, by requiring an interrogation to cease when either right is invoked, *Mosley, supr*a, at 103, 96 S.Ct. 321 (citing *Miranda*, supra, at 474, 86 S.Ct. 1602); *Fare v. Michael C.*, 442 U.S. 707, 719, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979).
>
> There is good reason to require an accused who wants to invoke his or her right to remain silent to do so unambiguously. A requirement of an unambiguous invocation of *Miranda* rights results in an objective inquiry that "avoid[s] difficulties of proof and ... provide[s] guidance to officers" on how to proceed in the face of ambiguity. *Davis*, 512 U.S., at 458–459, 114 S.Ct. 2350. If an ambiguous act, omission, or statement could require police to end the interrogation, police would be required to make difficult decisions about an accused's unclear intent and face the consequence of suppression "if they guess wrong." *Id*., at 461, 114 S.Ct. 2350. Suppression of a voluntary confession in these circumstances would place a significant burden on society's interest in prosecuting criminal activity. See *id.*, at 459–461, 114 S.Ct. 2350; *Moran v. Burbine*, 475 U.S. 412, 427, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). Treating an ambiguous or equivocal act, omission, or statement as an invocation of *Miranda* rights "might add marginally to *Miranda* 's goal of dispelling the compulsion inherent in custodial interrogation." *Burbine*, 475 U.S., at 425, 106 S.Ct. 1135. But "as *Miranda* holds, full comprehension of the rights to remain silent and request an attorney are sufficient to dispel whatever coercion is inherent in the interrogation process." *Id*., at 427, 106 S.Ct. 1135; see *Davis, supra*, at 460, 114 S.Ct. 2350.
>
> Thompkins did not say that he wanted to remain silent or that he did not want to talk with the police. Had he made either of these simple, unambiguous statements, he would have invoked his "'right to cut off questioning.'" *Mosley, supra*, at 103, 96 S.Ct. 321 (quoting *Miranda*, supra, at 474, 86 S.Ct. 1602). Here he did neither, so he did not invoke his right to remain silent.

560 U.S. at 381-382.

In rejecting Thompkins' argument that he had not waived his right to remain silent, the Supreme Court stated:

> Even absent the accused's invocation of the right to remain silent, the accused's statement during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused "in fact knowingly and voluntarily waived [*Miranda*] rights" when making the statement. *Butler*, 441 U.S., at 373, 99 S.Ct. 1755. The waiver inquiry "has two distinct dimensions": waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Burbine, supra*, at 421, 106 S.Ct. 1135.
>
> ...
>
> The course of decisions since *Miranda*, informed by the application of *Miranda* warnings in the whole course of law enforcement, demonstrates that waivers can be established even absent formal or express statements of waiver that would be expected in, say, a judicial hearing to determine if a guilty plea has been properly entered. Cf. Fed. Rule Crim. Proc. 11. The main purpose of *Miranda* is to ensure that an accused is advised of and understands the right to remain silent and the right to counsel. See *Davis*, *supra*, at 460, 114 S.Ct. 2350; *Burbine, supra*, at 427, 106 S.Ct. 1135. Thus, "[i]f anything, our subsequent cases have reduced the impact of the *Miranda* rule on legitimate law enforcement while reaffirming the decision's core ruling that unwarned statements may not be used as evidence in the prosecution's case in chief." *Dickerson v. United States*, 530 U.S. 428, 443–444, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).
>
> One of the first cases to decide the meaning and import of *Miranda* with respect to the question of waiver was *North Carolina v. Butler*. The *Butler* Court, after discussing some of the problems created by the language in *Miranda*, established certain important propositions. *Butler* interpreted the *Miranda* language concerning the "heavy burden" to show waiver, 384 U.S., at 475, 86 S.Ct. 1602, in accord with usual principles of determining waiver, which can include waiver implied from all the circumstances. See *Butler*, *supra*, at 373, 376, 99 S.Ct. 1755. And in a later case, the Court stated that this "heavy burden" is not more than the burden to establish waiver by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).
>
> The prosecution therefore does not need to show that a waiver of *Miranda* rights was express. An "implicit waiver" of the "right to remain silent" is sufficient to admit a suspect's statement into evidence. *Butler, supra*, at 376, 99 S.Ct. 1755. *Butler* made clear that a waiver of *Miranda* rights may be implied through "the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver." 441 U.S., at 373, 99 S.Ct. 1755. The Court in *Butler* therefore "retreated" from the "language and tenor of the *Miranda* opinion," which "suggested that the Court would require that a waiver ... be 'specifically made.'" *Connecticut v. Barrett*, 479 U.S. 523, 531–532, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987) (Brennan, J., concurring in judgment).
>
> If the State establishes that a *Miranda* warning was given and the accused made an uncoerced statement, this showing, standing alone, is insufficient

> to demonstrate "a valid waiver" of *Miranda* rights. *Miranda*, *supra*, at 475, 86 S.Ct. 1602. The prosecution must make the additional showing that the accused understood these rights. (citations omitted). Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent.
>
> Although *Miranda* imposes on the police a rule that is both formalistic and practical when it prevents them from interrogating suspects without first providing them with a *Miranda* warning, *see Burbine*, 475 U.S., at 427, 106 S.Ct. 1135, it does not impose a formalistic waiver procedure that a suspect must follow to relinquish those rights. As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford. (citations omitted)....
>
> The record in this case shows that Thompkins waived his right to remain silent. There is no basis in this case to conclude that he did not understand his rights; and on these facts it follows that he chose not to invoke or rely on those rights when he did speak. First, there is no contention that Thompkins did not understand his rights; and from this it follows that he knew what he gave up when he spoke. See *id.*, at 421, 106 S.Ct. 1135. There was more than enough evidence in the record to conclude that Thompkins understood his *Miranda* rights. Thompkins received a written copy of the Miranda warnings; Detective Helgert determined that Thompkins could read and understand English; and Thompkins was given time to read the warnings. Thompkins, furthermore, read aloud the fifth warning, which stated that "you have the right to decide at any time before or during questioning to use your right to remain silent and your right to talk with a lawyer while you are being questioned." Brief for Petitioner 60 (capitalization omitted). He was thus aware that his right to remain silent would not dissipate after a certain amount of time and that police would have to honor his right to be silent and his right to counsel during the whole course of interrogation. Those rights, the warning made clear, could be asserted at any time. Helgert, moreover, read the warnings aloud.
>
> Second, Thompkins's answer to Detective Helgert's question about whether Thompkins prayed to God for forgiveness for shooting the victim is a "course of conduct indicating waiver" of the right to remain silent. *Butler*, *supra*, at 373, 99 S.Ct. 1755. If Thompkins wanted to remain silent, he could have said nothing in response to Helgert's questions, or he could have unambiguously invoked his *Miranda* rights and ended the interrogation. (citations omitted).

*Id.* at 383-386. In rejecting Tompkins' argument that his statements were coerced, the Supreme Court stated:

> Third, there is no evidence that Thompkins's statement was coerced. *See Burbine*, *supra*, at 421, 106 S.Ct. 1135. Thompkins does not claim that police threatened or injured him during the interrogation or that he was in any way fearful. The interrogation was conducted in a standard-sized room in the middle of the afternoon. It is true that apparently he was in a straight-backed chair for three hours, but there is no authority for the proposition that an interrogation of this length is inherently coercive.

> Indeed, even where interrogations of greater duration were held to be improper, they were accompanied, as this one was not, by other facts indicating coercion, such as an incapacitated and sedated suspect, sleep and food deprivation, and threats. *Cf. Connelly*, 479 U.S., at 163–164, n. 1, 107 S.Ct. 515. The fact that Helgert's question referred to Thompkins's religious beliefs also did not render Thompkins's statement involuntary. "[T]he Fifth Amendment privilege is not concerned 'with moral and psychological pressures to confess emanating from sources other than official coercion.' " *Id.*, at 170, 107 S.Ct. 515 (quoting *Oregon v. Elstad*, 470 U.S. 298, 305, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985)). In these circumstances, Thompkins knowingly and voluntarily made a statement to police, so he waived his right to remain silent.

*Id.* at 386-387.

Ruling of the Court

In this case, the transcript and the video show that Defendant Mejorado was informed of his *Miranda* rights, and unequivocally stated two times that he understood his *Miranda* rights. After the agent read Defendant his rights, the agent asked him "Do you understand?" Defendant responded: "I do. I just have a question, um, can I know what's going on?" No facts suggest that Defendant's acknowledgment that he understood his *Miranda* rights was equivocal or uninformed in any way. Defendant did not say that he wanted to remain silent or that he did not want to talk to agents. Defendant continued to ask the agent questions relating to the circumstances of his arrest. The agent continued to ask the Defendant questions relating to the circumstances of his arrest. Defendant continued to willingly respond to questions relating to the circumstances of his arrest. Defendant continued to state that he did not know why he was under arrest and to deny knowledge of any narcotics in his vehicle. Defendant chose not invoke his right to remain silent at any time prior to his request for counsel.

Considering the totality of the circumstances and in light of the analysis of the United States Supreme Court in *Thompkins*, the Court concludes that the video and transcript establish by a preponderance of the evidence that Defendant waived his right to remain silent. Defendant's continued questioning of the agent and continued responses to the agent's questions show a course of conduct indicating waiver. The video and the transcript show that Defendant affirmatively engaged the agent in conversation asking questions and responding willingly and without delay.

After approximately ten minutes, Defendant asked the agent: "When can I see a lawyer?" The agent responded: "Do you want one?" Defendant answered: "Wait, no. I'm asking you first." (ECF No. 62-1 at 16). The conversation continued. Defendant continued to waive his right to remain silent and did not unambiguously invoke his *Miranda* right to counsel at this point in the interview. "If an accused makes a statement concerning the right to counsel 'that is ambiguous or equivocal' or makes no statement, the police are not required to end the interrogation, *ibid*., or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights." *Thompkins*, 560 U.S. at 381 (citing *Davis v. United States*, 512 U.S. 452, 461–462 (1994)). The conversation continued until Defendant unambiguously invoked his right to counsel stating: "Hold on. I want a lawyer." *Id*. at 23. At that point, the questioning ceased.

Finally, the Court finds that there is no evidence in this record that any statement made by the Defendant was coerced. There is no claim in this case that the agent threatened or injured the Defendant. The video shows that the interview took place in an office at approximately 11 a.m. The interview lasted less than a half hour and no factors suggest psychological or physical pressure on the Defendant.

The Supreme Court in *Thompkins* stated: "Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." 560 U.S. at 384. In this case, *Miranda* warnings were given, Defendant unequivocally stated that he understood the warning. The evidence clearly establishes by a preponderance that all statements made by the Defendant were uncoerced, knowing, and voluntary.

Defendant's motion to suppress his statement on the grounds that the Government cannot demonstrate a valid *Miranda* waiver is denied.

IT IS HEREBY ORDERED that 1) Defendants' combined motion for an order suppressing evidence is denied as moot and motion for an order directing the Government to return Defendants' mobile phones is granted (ECF No. 50); and 2)

Defendant Mejorado's motion for an order suppressing post-arrest statements (ECF No. 51) is denied.

DATED: January 7, 2015

**WILLIAM Q. HAYES**
United States District Judge